NOT DESIGNATED FOR PUBLICATION

No. 123,671

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DANNY E. BEAUCLAIR,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; STEVEN R. EBBERTS, judge. Opinion filed December 9, 2022. Affirmed.

*Reid T. Nelson*, of Capital and Conflicts Appeals Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON and WARNER, JJ.

PER CURIAM: This is the latest round in Danny E. Beauclair's 20-year fight to escape two felony convictions for sexually abusing his stepdaughter, even though he confessed to the criminal conduct and pleaded no contest to the charges. The Shawnee County District Court held an evidentiary hearing to determine if Beauclair could make a colorable showing of actual innocence, thereby permitting him to pursue this otherwise untimely and successive habeas corpus motion challenging the convictions. Based largely on credibility determinations adverse to Beauclair, the district court found he had failed to carry that burden and denied the motion as procedurally barred as a result. Beauclair has appealed. We have no sound legal or factual bases to question the district court's

1

conclusions about the comparative veracity of the testifying witnesses. We, therefore, affirm the district court's decision to deny the motion.

FACTUAL AND PROCEDURAL HISTORY

In March 1999, M.M. reported that Beauclair had been sexually abusing her. She was then about 14 years old and Beauclair's stepdaughter. During the investigation of those accusations, Ronald Gish, a detective with the Topeka Police Department, questioned Beauclair. During the interrogation, Beauclair made incriminating statements to the effect he had had sexual intercourse with M.M. and admitted engaging in cunnilingus with her. He told the detective the sexual contact had been going on for more than a year. In November 1999, the State charged Beauclair with one count rape of a child under 14 years old and one count aggravated criminal sodomy of a child under 14 years old and eventually added a third felony count.

In early 2001, M.M. and Detective Gish testified at a preliminary hearing. Detective Gish recounted the substance of Beauclair's admissions. The transcript suggests M.M. was emotionally upset and crying during at least a portion of her testimony. In response to the prosecutor's often leading questions, she acknowledged abuse consistent with the charges against Beauclair. During the preliminary hearing, M.M. did not back away from, let alone recant, her original accusations. After the district court bound Beauclair over for trial, his lawyer worked out an agreement with the State for him to plead no contest to the initial rape and sodomy charges. In August 2001, Beauclair entered the no-contest pleas, and the district court adjudged him guilty of the two charges.

In early 2002, the district court denied Beauclair's request for a departure sentence and ordered him to serve a controlling prison term of 184 months followed by 36 months of postrelease supervision. Beauclair appealed the sentence. This court afforded him no

2

relief, and the mandate issued on July 1, 2003. See *State v. Beauclair*, No. 88,885, unpublished opinion filed April 11, 2003.

During his time in prison, Beauclair filed numerous challenges to his convictions and sentences in both the Kansas state courts and the federal courts. Those claims typically took the form of requests for habeas corpus relief under K.S.A. 60-1507 and the federal statutory counterpart or motions to correct illegal sentences under K.S.A. 22-3504. Those efforts yielded nothing for Beauclair. A catalog of that aspect of the procedural background may be found in *Beauclair v. State*, 308 Kan. 284, 285-89, 419 P.3d 1180 (2018).

In 2012, Beauclair filed the 60-1507 motion at issue in this appeal. The motion is plainly successive under K.S.A. 60-1507(c) and was filed beyond the one-year time limit in K.S.A. 60-1507(f)(1). To avoid those procedural barriers, Beauclair had to show exceptional circumstances or manifest injustice respectively. A colorable claim of actual innocence may be legally sufficient. *Beauclair*, 308 Kan. 284, Syl. ¶¶ 1-2. The district court summarily denied the motion. Beauclair appealed.

On appeal, we affirmed the district court specifically because the motion was untimely and Beauclair had not established manifest injustice. *Beauclair v. State*, No. 112,556, 2016 WL 852859, at *1 (Kan. App. 2016) (unpublished opinion). Among the documents Beauclair filed with the motion was a declaration M.M. purportedly signed in 2007 recanting her allegations against him and referring to earlier signed recantations. We recognized that typically a signed recantation from the putative victim would be sufficient to require an evidentiary hearing on actual innocence as a bypass around the bars for untimely and successive 60-1507 motions. 2016 WL 852859, at *2. We discounted the declaration, however, because of its age and lack of provenance, i.e., where and under what circumstances it had been made. Furthermore, to that point, Beauclair had never suggested the inculpatory statements he made to Detective Gish were

false. In his petition for review to the Supreme Court, he asserted (apparently for the first time) that his confession to Detective Gish was false. *Beauclair*, 308 Kan. at 293.

On review, the Kansas Supreme Court concluded we had been unduly dismissive of the signed declaration. The court held that the declaration was sufficient to require an evidentiary hearing on Beauclair's claim of actual innocence as a legal precursor to considering the merits of the 60-1507 motion and remanded to the district court to hold such a hearing. 308 Kan. at 305.

The district court heard testimony, received other evidence, and listened to the argument of the prosecutor and the lawyer for Beauclair on two days—the first in October 2019 and the second in August 2020. By that time, Beauclair had served his sentence and presumably had completed his postrelease supervision, although the convictions remained intact. The witnesses at the hearing included Beauclair, his former wife and M.M.'s mother, M.M., and Detective Gish. Among other materials, Beauclair offered declarations dated in 2003 and 2007 that M.M. purportedly signed stating her accusations against Beauclair were false and a signed declaration from 2004 incorporating by reference the statements in the 2003 declaration. The State introduced a videotape of Detective Gish's 1999 interrogation of Beauclair.

Beauclair testified that he did not sexually abuse M.M. Elaborating on representations he made in his petition for review to the Kansas Supreme Court in 2016, Beauclair said he gave a false confession to Detective Gish on the advice of his lawyer to aid his application for diversion in the criminal case and to avoid termination of his and M.M's mother's parental rights in a child in need of care proceeding the State had filed. Neither Beauclair nor the State called the lawyer as a witness.

In her testimony, M.M. denied signing the declarations and confirmed that Beauclair had sexually abused her. M.M. admitted having only an indistinct recollection

4

of the oral sodomy and first testified that it didn't happen and then said she didn't specifically recall whether it happened.

The district court filed a written ruling in December 2020 finding that Beauclair had not made a colorable showing of actual innocence and was not legally entitled to proceed with his 60-1507 motion. The district court found M.M.'s hearing testimony to be credible and consistent with her testimony at the preliminary hearing 20 years earlier. Conversely, the district court found Beauclair to be unworthy of belief in his denial of abusing M.M. and in his explanation for his confession to Detective Gish. The district court pointed out that the progression of Detective Gish's questioning and Beauclair's responses didn't square with someone intending to admit wrongdoing from the outset. During the interrogation, Beauclair refused to acknowledge he engaged in any improper conduct with M.M. until Detective Gish confronted him with a note M.M. had written to a friend about what happened. Only then did Beauclair reluctantly acknowledge what he had done.

Beauclair has now appealed the district court's ruling that precluded relief on his 60-1507 motion, and that is what he have in front of us.

LEGAL ANALYSIS

The issue on appeal is the narrow one on which the Kansas Supreme Court remanded to the district court: Has Beauclair presented a colorable claim of actual innocence, thereby permitting this successive and untimely 60-1507 to go forward? The burden is on Beauclair to make that showing.

Because the district court held an evidentiary hearing, we apply a well-established bifurcated standard of review. We first ask whether the district court's factual findings are supported by substantial competent evidence. Substantial evidence is that which would

5

permit a reasonable person to accept the conclusion it supports. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 481, 509 P.3d 1211 (2022). We answer that question without making new credibility determinations or otherwise reweighing conflicting evidence. We then ask whether the supported factual findings warrant the legal conclusion—a decision we reach without any particular deference to the district court. See *Geer v. Eby*, 309 Kan. 182, 190-91, 432 P.3d 1001 (2019); *State v. Gilliland*, 294 Kan. 519, Syl. ¶ 1, 276 P.3d 165 (2012).

Because of the centrality of witness credibility to the district court's determination, we outline why appellate courts do not look behind those decisions. The primary mechanisms for measuring the candor and reliability of a witness are: (1) the taking of an oath to tell the truth; (2) the rigor of cross-examination to test the statements; and (3) the fact-finder's opportunity to gauge demeanor, especially on cross-examination. See *State v. Becker*, 290 Kan. 842, 846, 235 P.3d 424 (2010); *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008) ("[T]he ability to observe the declarant is an important factor in determining whether he or she is being truthful."). In short, the judicial process treats an appearance on the witness stand, with the taking of an oath and the testing of cross-examination, as perhaps the most discerning crucible for separating honesty and accuracy from mendacity and misstatement. *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014); *In re Marriage of Nusz*, No. 123,788, 2022 WL 503720, at *14 (Kan. App. 2022) (unpublished opinion). An appellate court has no comparable vantage point and cannot draw on the same breadth of in-person observation as the fact-finder does during a hearing or trial. And that's precisely why we neither make original credibility determinations from a transcript nor jettison those of the fact-finder. Accordingly, the appellate standard heavily insulates the district court's factual findings resting on witness testimony and the resolution of any conflicts in those accounts.

Applying those principles, we travel a rather linear path to our conclusion. The district court found Beauclair to be lacking veracity in his two key assertions—he did not

sexually abuse M.M., and he falsely admitted doing so at the direction of his lawyer to improve his legal options. There is substantial evidence in the record to support those conclusions. First, the way Detective Gish's questioning of Beauclair unfolded and only slowly arrived at grudging admissions is inconsistent with Beauclair's hearing testimony. Second, Beauclair did not try to take back those admissions for more than 15 years and did so only when he realized they imposed a legal impediment to this 60-1507 motion. If they actually were false, one could reasonably conclude Beauclair would have said so in 2002 when he didn't get diversion and got a 184-month prison sentence instead.

The conflicting hearing testimony of Beauclair and M.M. presented a classic credibility contest left for the fact-finder to decide based in no small part on the demeanor and comportment of the two as they testified. And that's precisely the studied assessment the district court made. We will not disturb that determination.

Moreover, of course, Beauclair's dissembling about the accuracy of his admissions to Detective Gish and the legal advice he received buttresses the conclusion he also lied when he testified he never assaulted M.M. The two are interwoven factually—if Beauclair told Detective Gish the truth, then M.M. must have testified truthfully at the hearing; and conversely if Beauclair deliberately lied to Detective Gish, then M.M.'s testimony would be suspect. In addition, a fact-finder may conclude that a witness who has demonstrably dissembled about one important matter very well may have dissembled about others. That's the permissible inference underlying the longstanding maxim that a witness false in one thing may be false in all things. See *State v. Medlicott*, 9 Kan. 257, 272, 1872 WL 626 (1872); *Franco*, 49 Kan. App. 2d at 936; *United States v. Anderson*, No. 19-1121, 782 Fed. Appx. 187, 191 (3d Cir. 2019) (unpublished opinion).

In short, the district court found M.M. to be truthful in her testimony that Beauclair sexually abused her in a manner supporting the criminal charges on which he was convicted and, secondarily, that she did not sign the declarations attributed to her.

7

The finding rests on a credibility determination we will not set aside and is substantially supported in M.M.'s credited testimony. In turn, that factual finding amply justifies the district court's conclusion that Beauclair has not made a colorable showing of actual innocence. Accordingly, we affirm the district court's ruling.

On appeal, Beauclair argues we should carve out his conviction for aggravated criminal sodomy because M.M.'s testimony at the hearing was, at best, equivocal about the circumstances, and, at one point, she said there had been no oral sex. M.M., however, retreated from that statement and testified she had tried to forget the details of what Beauclair did to her and couldn't specifically recall whether he forced himself on her in that way. Notwithstanding M.M.'s inconsistent testimony, Beauclair's argument fails because he clearly admitted to Detective Gish he engaged in oral sex with M.M. and the district court found those admissions reliable. So Beauclair's confession undercuts his claim of actual innocence.

Similarly, on appeal, Beauclair argues that the lawyer representing him at the hearing provided him ineffective legal representation. We are not in a position to consider the argument because that lawyer has not testified. And we, therefore, have no idea what strategic considerations went into her presentation of the case on Beauclair's behalf at the hearing. See *State v. Hilyard*, 316 Kan. 326, 339-40, 515 P.3d 267 (2022); *State v. Williams*, 299 Kan. 1039, 1047-50, 329 P.3d 420 (2014); *State v. Bashier*, No. 117,701, 2018 WL 6253405, at *1 (Kan. App. 2018) (unpublished opinion) (Courts typically do not consider ineffectiveness claims raised for first time on appeal "for the very practical reason that little in the record sheds much light on the strategic considerations, if any, a trial lawyer may have had for taking certain actions or for having not acted in other ways."). A reviewing court should give considerable deference to reasoned strategic considerations of a trial lawyer in weighing an ineffectiveness claim. Seldom should a lawyer's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among arguably suitable

options. *Strickland v. Washington*, 466 U.S. 668, 690-91, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Sola-Morales v. State*, No. 118,451, 2019 WL 6041443, at *5 (Kan. App. 2019) (unpublished opinion).

Beauclair specifically suggests the lawyer representing him during the hearing might have challenged or impeached M.M.'s testimony in some additional ways. Impeachment of a witness entails strategic calculations entrusted to a lawyer's professional judgment about what may or may not be effective under the circumstances. See *State v. Butler*, 307 Kan. 831, 853-54, 416 P.3d 116 (2018); *State v. Johnson*, 304 Kan. 924, 951-52, 376 P.3d 70 (2016). Especially without some insight into the lawyer's approach in challenging M.M.'s credibility, we decline to find her performance to be ineffective. This is not the exceptionally rare instance in which a lawyer's handling of a significant tactical matter is so inept as to be without any possible strategic purpose, thereby permitting appellate review in the first instance. See *Wimbley v. State*, 292 Kan. 796, 807, 275 P.3d 35 (2011).

Furthermore, the district court, having presided over the hearing, would be in a better position than are we to assess those sorts of claims for actual prejudice to Beauclair. Even if the lawyer's performance were inadequate, Beauclair would still have to show legal prejudice to be afforded relief, presumably in the form of a new hearing. See *Strickland*, 466 U.S. at 687-88, 694; *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021). Having seen and heard the witnesses, particularly M.M., the district court could gauge whether the additional impeachment would have made any material difference in assessing their credibility. If not, then, Beauclair's claim would fail regardless of the lawyer's strategy in questioning M.M. See *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). The district court ought to be allowed to make the initial assessment of possible prejudice— something that likely could be done without an evidentiary hearing on the lawyer's

performance and something that Beauclair's request to us presently precludes. We choose not to usurp the district court.

In sum, we find no error in the district court's decision rejecting Beauclair's assertion of actual innocence and, in turn, denying relief to him on the 60-1507 motion.

Affirmed.